UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| MARY SMITH, a minor; by and through her mother and guardian JANE DOE, <br>-and- <br>JANE DOE, <br><br>                Plaintiffs, <br><br>-v- <br><br>BOARD OF EDUCATION OF FREDERICK COUNTY, MARYLAND, consisting of its President Brad W. Young, Vice President, Liz Barrett, and members Michael Bunitsky, Colleen Cusimano, Ken Kerr, April Miller, Joy Schaefer, and Theresa R. Alban, Superintendent of Schools, each in their official capacities; and FREDERICK COUNTY PUBLIC SCHOOLS. | Case No._____ <br><br><br><br><br>**JURY TRIAL DEMANDED** |

---

## COMPLAINT

      Plaintiffs Mary Smith, by and through her mother Jane Doe, and Jane Doe, state as follows:

1. Mary Smith's civil rights, including her fundamental right to bodily privacy, are being intentionally violated contrary to the United States and Maryland Constitutions and statutory laws.

2. Jane Doe's fundamental parental rights to the care, custody, control, upbringing and information regarding her child is also being intentionally violated.

3. Those laws protecting her include the First Amendment, Fourteenth Amendment, Title IX, invasion of privacy and seclusion, the Maryland Constitution, Declaration of Rights: Freedom of Speech and Due Process (Articles 24 & 40, Edu. Art. 7-121), Equality of Rights Not Denied On Basis of Sex (Article 46), Separation of Powers-Legislative Proceedings and Government

derived of the people and its English Common Law (Articles 1, 5, 8 & 10), and Md. Ann. Code Education Articles §§ 7-424 (Bullying), § 7-301 (Compulsory Attendance), 2-205 (Powers and Duties of the Board [of Education]), § 4-117(b)(1)(Construction or Remodeling of Buildings to conform to State codes), § 5-301 (Public School Construction and Capital Improvements), and Md. Ann. Code Public Safety Article § 12-503 (Construction of State Buildings) and its authority via regulations and construction codes including COMAR 05.02.01, The State Model Performance Code (MPC) For State Buildings (Re: Executive Order 01.01.1992.11; dated 1992), and the International Building Code, each adopted thereunder, which requires separate facilities on the basis of sex.

## JURISDICTION AND VENUE

4. This action arises under 42 U.S.C. §§ 1983 *et seq.* (the "Civil Rights Act") to redress the deprivation of rights secured by the Fourteenth Amendment to the United States Constitution, 20 U.S.C. §§ 1681 *et seq.* ("Title IX"), the State of Maryland Constitution and common law and the aforesaid state statutes.

5. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1361 and 1367.

6. The Court has jurisdiction to issue the requested declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57.

7. The Court has jurisdiction to award nominal and compensatory damages under 28 U.S.C. § 1343(a)(4).

8. The Court has jurisdiction to award reasonable attorney's fees and costs under 28 U.S.C. § 2412, 42 U.S.C. § 1988.

9. Venue lies in this District because a substantial part of the events giving rise to all claims occurred here where the District Defendant is located, pursuant to 28 U.S.C. § 1391(b) and (e).

10. The Court has personal jurisdiction over Defendants because they are domiciled in Maryland.

## PARTIES

### *Plaintiffs*

11. Plaintiff and her guardian are citizens of the United States and residents of historic Frederick County, Maryland.

12. Plaintiff Mary Smith is a 15-year-old minor girl. She is a student at a Frederick County High School under the jurisdiction of the Frederick County Board of Education. Mary Smith asserts her civil rights as a woman in her attached, sealed Declaration filed herewith identifying herself and certain protected personal facts (**Exhibit A, incorporated herewith**). Because she is a minor, this action is brought on her behalf by her mother and legal guardian.

13. Jane Doe is the mother of Mary Smith. She is a resident of Frederick County and is experiencing a deprivation of her fundamental right as a parent to the care, custody, control, upbringing and information concerning her daughter. Her Declaration is also attached, in sealed format with certain protected personal facts (**Exhibit B, incorporated herewith**).

### *Defendants*

14. Defendant Board of Education of Frederick County, Maryland ("BOE-FC" or "Board of Education") is the governing entity of the Frederick County Public Schools ("FCPS") and is organized and derives its authority from the laws of the State of Maryland.

15. The Board of Education oversees public educational institutions that provide students a pre-kindergarten through 12th grade education.

16. The Board of Education and FCPS receive federal funds and so are subject to the requirements of Title IX.

17. The Board of Education and FCPS includes 66 schools, including 36 elementary schools, 13

middle schools, 10 high schools, 3 public charter schools, an alternative school, a special education school, Flexible Evening High and a Career and Technology Center. Plans are underway to add 2 more elementary schools in the next 3 years.

18. The Board of Education governs the FCPS and its Superintendent, who also sits as secretary-treasurer of the Board of Education, and is the final decision-making authority for all FCPS actions or decisions.

19. The Board of Education is responsible for the enforcement of policies through its decisions and orders to the Superintendent of Schools and administrators, teachers and other employees.

20. At all times relevant herein, the Defendants acted within their scope of authority as elected officials and members of the Board of Education; Theresa Alban, who is appointed to the Board and is the only non-elected member, serves in her capacity as an agent and representative of the Board of Education.

## INTRODUCTION

21. In such official capacity, the Board of Education, its members, and FCPS implemented new policies in the fall of 2016 and Spring of 2017, namely Policies 437 (Anti-Bullying and Harassment) and 443 ("Transgender and Gender Non-Conforming Students"), which permit students of one sex to enter and use restrooms, locker rooms and shower facilities ("bath facilities") designated for members of the opposite sex.

22. The policies also allow for males who identify as females to compete against females under Title IX sports programs and share hotel rooms with them on trips, violating the rights of students who are of the female sex.

23. On information and belief, prior to the policies being passed by the Board of Education, for several years the Board of Education and/or FCPS authorized the use of bath facilities by

members of the opposite sex without informing parents of the change and in *ultra vires* to its authority under state or federal law.

24. The said policies, like a sad chapter from the history of the child cults Soviet Komsomol or Young Pioneers in the failed USSR, further calls for government personnel, teachers, administrators and school employees ("government official") to prevent and refuse parental access to information about their child whenever the school employee deems it might be detrimental to the "best interest" of the child, including a delegation of power to the government official for consideration of the parent's religious, cultural and political viewpoints involving so-called gender or sexual identity.

25. Defendant Board of Education has policy-making authority not otherwise provided for in the state school bylaws and regulations to establish policies and practices pursuant to education, however, that authority does not extend to re-classifying State construction codes which mandate separate male and female bath facilities in all government buildings including public schools.

26. On information and belief, the General Assembly in 2014, under then-Governor Martin O'Malley, debated and because of the public outcry to protect the state's children could not pass any state mandate to require bath facility construction Codes to no longer mandate male and female bath facilities, and instead specifically exempted religious education institutions and private schools from any mandate to allow access to bath facilities by members of the opposite sex, while also remaining silent in the law concerning public school bath facilities, consoling parents that the Legislature of Maryland would not force such a policy of opposite sex students being permitted into bath facilities under "gender identity" or other law.

27. The Board of Education has no authority to alter, abolish or amend the state's construction

codes nor its Legislative policy for male and female bathrooms.

28. Instead, on information and belief, since the Legislative process was foreclosed to the changes desired by some in political positions on the Board of Education, they acted *ultra vires* and passed the policies with minimal public notice and input, not once requesting parental guidance or feedback on the substantive change to the 400-year policy under English common law and American statutory law and jurisprudence of separate bath facilities for children in the schools.

29. Only in history do we see totalitarian regimes that arrogate to itself powers to force children and citizens to undress in front of members of the opposite sex.

30. In Western civilization, the importance of privacy and personal control over one's right to not be forced to undress by a state official in front of a member of the opposite sex is both sacred and the very essence of what the law protects under the jurisprudence of personal freedom and dignity.

31. Defendants purposefully and intentionally violated Plaintiffs' rights and have further attempted to harass and coerce the minor Plaintiff and her mother into abridging their freedom of speech by threatening retaliation, expulsion and permanent negative academic records for failure to use the pronouns now mandated which upon information and belief, call a male a female when the person or government official requires such pronoun use.

32. Only in totalitarian regimes do government officials threaten individuals with retaliation if they do not make government-mandated speech such as this Board of Education is mandating under its policies by forcing students to use pronouns in violation of their right to Free Speech.

33. This case is easily disposed of in favor of Plaintiffs because state law requires the Board of Education to follow the procedures of Free Government, that is, the Legislature creates and passes the laws of the land and no Board of Education can issue, pass, proclaim or require any

policy in contravention to state law, which is exactly what these Defendants have done.

34. Furthermore, the merits of the case in defense of Plaintiffs' civil liberties and constitutional freedoms guaranteed under the Fourteenth Amendment must be and should be easily upheld if we are to remain a civilized society. This is particularly true when considering the Legislature of Maryland has previously indicated that separate facilities for those who suffer from gender dysphoria can be provided as a matter of compliance in private facilities that have public-access. How much more in matters of education and schools, where children are in the "tender years" and puberty can cause pressures and stresses on youth, that we as a civil society uphold common decency and principles of freedom to ensure that youth are protected in their persons and liberties without the tyranny of a very tiny minority.

35. The policies and practice of both secretly imposing bath facility use by opposite sexes and the new policies of 437 and 443 have had a severe and negative impact on Plaintiff Mary Smith. These include feelings of concern and embarrassment, and she stands fearful and concerned for her safety, of the humiliation and stigma of being viewed by members of the opposite sex, and the stigma and threats she is receiving and will receive in these policy mandates. Defendants policies expose her to retaliation, ridicule and permanent negativity in her school records should she fail to comply with the speech and bath facility mandates and be viewed wrongly as "harassing, intimidating or threatening" or "causing mental or emotional harm" just because she speaks the truth and wants to maintain her own decency and privacy.

36. Plaintiff Mary Smith and girls like her are avoiding the bath facilities altogether just to avoid any potential concerns for their privacy and safety. She demands her rights and protections as a woman.

37. Plaintiff Mary Smith is also a victim of prurient acts at her public school bath facility, with the

failure of her school to adequately monitor the bath facilities, providing opportunity for a female student to video her undressing on her phone and to then distribute photos of her body.

38. Such failures in school administrative personnel to monitor the school bath facilities and hotel rooms while on school trips, coupled with the extreme rise in rape of girls in the public-school bath stalls, demonstrates the urgency for prevention of these horrific policy changes by injunction.

## FACTS

39. All paragraphs in this complaint are incorporated as if fully set forth herein.

40. On information and belief as recently learned from statements of Board of Education Vice President Liz Barrett to parents at a hearing, the Board of Education has for several years allowed males and females to ignore the sex-specific bathrooms and locker rooms at FCPS schools.

41. This practice was not supported by any Board of Education public policy or state law, but predicated upon a secret, off-the-record agreement with the Superintendent of Schools to begin to allow this practice in the schools.

42. The practice violated the privacy of students and rights of parents.

43. The practice was recently made official public policy of the Board of Education with the passage of Policies 437 and 443 and enforcing regulations (**Exhibit C, attached and incorporated herewith**).

44. Under this illegal practice of the Board of Education, minor Plaintiff was left unsupervised in a girls' locker room at her FCPS school with other students, also against public FCPS policy.

45. One child videoed minor Plaintiff and her friends in various stages of undressing in the bath facility during PE and uploaded it to the internet, while in school. Minor Plaintiff was partially

undressed in the video. The video was discovered by one of minor Plaintiff's friends and a teacher was informed. This was during the time when cell phones were not to be used during school time and were certainly not to be used in locker rooms, but the practice was to not monitor the bath facilities so as to allow anyone to use either male or female facility if they chose to believe their gender identity should permit them entry and use. The lack of supervision also permitted, on information and belief, a sexualized climate in bath facilities at FCPS schools which continues to this day such that many girls no longer use the locker rooms or showers out of fear of being raped, videoed, or otherwise having their privacy invaded.

46. It is mandatory that students participate in PE class and change into clothing appropriate for Physical Education, causing great anxiety and emotional harm to Minor Plaintiff.

47. Minor Plaintiff does not participate in sports or other extracurricular activities that could require her to change her clothes or shower at her school because of this anxiety, depriving her of her right to privacy and involvement in school events.

48. Such secret practices by the Board of Education caused a deprivation of rights and civil liberties for minor Plaintiff and other girls and boys in the public schools, and deprived Jane Doe and other parents of their rights as parents to the protection and care of their children while at school, because Jane Doe was unaware that the school was forcing her daughter to be unsupervised in school locker rooms while other students of the opposite sex were allowed to enter the showers and bath facilities.

49. The policy 443 by the Board of Education has and is causing a deprivation of rights and civil liberties for minor Plaintiff and other girls and boys in the public schools, and deprived Jane Doe and other parents of their rights as parents to the protection and care of their children while at school because minor Plaintiff is concerned that at any moment a male who identifies as

female will enter her bath facility at school and she will feel humiliated, embarrassed and violated.

50. The policy 443 requires that Minor Plaintiff and any student who feels such violation of space be required to leave the locker room and enter a private bath facility, making the majority of students subservient to the minority who are male or female and entering the bath facility of the opposite sex.

51. Defendants have further attempted to harass and coerce the minor Plaintiff and her mother into abridging their freedom of speech by threatening retaliation, expulsion and permanent negative academic records for failure to use the pronouns now mandated which upon information and belief, call a male a female when the person or government official requires such pronoun use. **(Exhibit D, attached and incorporated herewith).**

52. Such humiliation, stress and government pressure has made minor Plaintiff feel belittled, ostracized if she were to speak out and request privacy, and intimidated into potentially undressing in front of males in her locker room just to avoid the stigma of being required to leave.

53. The public policy of the Maryland Legislature is turned on its head by the Board of Education in that the safe space bath facilities for single use are – for the general public – to be for males or females who identify as something other than their sex to use, not a policy to require those majority female students who disagree with males in their bath facilities to be forced to leave the women's bath facility and endure the stigma and loss of freedom for disagreeing with the Board of Education's sexual identity politics that have no basis in law or history outside of totalitarian regimes.

54. Minor Plaintiff has a "504" in place because she suffers from severe anxiety.  Through

therapy Jane Doe discovered her daughter's anxiety comes from being bullied in school, and observing other students being bullied while school staff does nothing to intervene and stop the bullying, and in one instance she noted in her school file, her teacher joined in making jokes about a student.

55. Minor Plaintiff's anxiety has only suffered worse from the Board of Education's secret policy and new public policy 443 that allows males to enter her bathroom and locker room.

56. The Board of Education's Policy 443 seeks to further erode parental rights by requiring State personnel in schools to keep certain facts from parents under a best interest analysis, which is an improper usurpation and delegation of parental authority to school personnel.

57. If a student is "transgendered" at school but not at home and being allowed to access the school bathroom and locker room of their "chosen" gender, under Policy 443 government officials may be forbidden from informing the child's parents if the official's personal analysis deems the student's parents may object to the transitioning or be opposed to the child's decisions.

58. A parent may not want their child in the private spaces of the opposite sex, regardless of whether they support their child seeking to be transgendered. FCPS is usurping parental rights by allowing a student to use an alternate identity at school than on the child's birth certificate and common use by the parents of the child as stated on school records, and seeks to retain authority to actually change the child's name without parental authority, up to and including alternate given first and surnames, and use of pronouns.

59. School officials have no lawful authority to change a minor's name or call them by any name other than that which the child's parents designate, nor do school officials have authority to change school records of enrolled names of students without parental authority.

60. The Board of Education's FCPS legal counsel is shown on official video explaining how she

informs teachers of how to keep information out of the public domain, including from parents. Members of the Board of Education are also on this video appearing to be comfortable with keeping certain information from parents and that there is only one way they would ever learn the facts of their child's transgenderism, that is via the "official" school record after a request and granting of permission to review that record, which the Policy 443 makes conditionally available only after an analysis by the State personnel whether the parent should know of the information regarding their child's "Transgender" status.

61. Through this policy the Board of Education and FCPS is prejudging parents to be unqualified to make decisions regarding their child's confused gender identity, in violation of the law of the land and the civil rights of Plaintiffs. FCPS justification for keeping this information from parents is "safety".

62. The anxiety, stress and embarrassment minor Plaintiff feels as a direct result of Defendants' practice and policies has caused her to refrain from using female locker rooms and bath facilities as much as possible, and is a constant point of stress and distraction while she is at school trying to pursue her education, including during instructional time.

63. Mary Smith feels shamed by the Board of Education as if she is a bad person for simply being a woman who is caring and compassionate but does not agree with undressing or voiding her bladder in front of males, and as such has had her privacy violated and invaded by the Defendants.

64. On August 9, 2017 Chief of Staff of the FCPS and FCPS counsel and lawyer Jamie Cannon, Esq. stated in response to questioning on this Policy 443 and implementing regulations that parents will only be notified once and if the school deems the child to be on a "suicide watch" or similar comments, stating that the school "transfers liability back to the parents" only upon

a designation of medical issues, and "Transgenderism" would not apply, or similar words.

65. On August 9, 2017 other Board of Education members, including Jamie Cannon, Esq., stated that the information of a child's "transitioning" to transgender will be withheld from parents under Policy 443 because "kids are many times scared of parents being upset or disciplining them because of their choices" or similar words.

66. On August 9, 2017 other Board of Education members, including Vice President Liz Barrett, stated that the Policy 443 is required in order to comply with "state law", but claims "COMAR" and "state regulations", and "400-20 and FERPA", requires no-parental disclosure.

67. On August 9, 2017 Board of Education members, including Vice President Liz Barrett and Joy Schaefer, stated "our reasons for not informing parents is because if we do a lot [sic] of students will not come to us for help [sic]". "Their kid doesn't feel safe talking to the child's parents, and that doesn't mean the child isn't safe at home, that's just a natural part of adolescence, and there is a sensitivity for that."

68. On August 9, 2017 Board of Education member and Vice President Liz Barrett stated that "it wouldn't matter if the student was transgender or non-binary, other students may have fears of parents and we need to consider when to [not contact parents] and call 9-1-1…" or similar words.

69. On August 9, 2017 Board of Education members asserted that the Policy 443 complies with "FERPA and state law" to "Respect parental rights" because "they have to, it is the law" so the second paragraph says what you want to protect parents, but not as strongly as [some parents] want" because "personal information about transgender and gender-non-conforming students" is "not to be shared with parents"… "if there is a health or safety concern". But other Board of Education members stated they want the policy to say "at all times, but especially if there is a

health or safety concern…because we must welcome and affirm all students for who they are…".

70. On August 9, 2017 Board of Education President Brad Young proposed that the policy 443 be changed to say "parents will be contacted if there is a health or safety concern" to which the Board of Education appeared to unanimously, with counsel of Jamie Cannon, Esq., approve of that change. This change was modified to allow no-parental contact or report when there is **no** health or safety concern, under color and pretense of state law violating Plaintiff's fundamental parental rights.

71. On August 9, 2017 the Board of Education, Vice President Liz Barrett, stated in public meeting that accommodations for parents who do not wish their daughter to be housed on field trips with a transgender male 1) may not be told about the concern, and 2) if they do know, may not be allowed to change rooms, stating that "some kids don't have to go on field trips if the parents don't want them to because we can't address every problem in the school system" and if you don't like it, "good grief, call the supervisor…" or similar words.

72. Defendants' policies, regulations and actions, including but not limited to Policy 437 ("bullying") and 443 ("transgender students") and its related regulations are forcing Plaintiff Mary Smith and students and parents to use the gender pronouns that the school or a fellow student demands, regardless of the actual sex of the student, all on pain of reporting for bullying, and mistreatment by discipline and retaliation permanently noted in the school records of the student against any offending student, by government school staff.

73. On May 30, 2017 Board of Education Vice President Liz Barrett, a "gender identity" activist who was the primary sponsor of and, on information and belief, internal lobbyist for Policy 443, wrote an e-mail response to Plaintiff Jane Doe addressing Plaintiff's concerns and

objections to the Policy 443 as not having appropriate public input and notice and VP Barrett stated: "…there is no political necessity [to obtain parental input]. The rights of any group of FCPS children aren't up for a community "vote" or "survey." I'm a parent, and I'm not interested in the community deciding where my child can use the bathroom, nor am I interested in staff members or others questioning the restroom my children use…." (**Exhibit E, attached and incorporated herewith**).

74. VP Barrett admits in this statement that Defendants have no compelling state interest or "political necessity" to justify this violation of minor's right to bodily privacy from persons of the opposite sex.

75. Because of the Defendants' privacy violation, and continuing actions of invading Mary Smith's privacy and Jane Does's parental rights, Plaintiffs are experiencing anxiety, stress, intimidation, fear, apprehension and loss of dignity.

76. Plaintiffs are suffering and will continue to suffer irreparable harm because of Defendant's actions.

77. Plaintiffs have no adequate remedy at law and as such apply to this Court for injunctive relief.

## COUNT ONE

### VIOLATION OF RIGHT TO PRIVACY IN CONTRAVENTION TO THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND ARTICLES 5 AND 24 OF THE MARYLAND CONSTITUTION, DECLARATION OF RIGHTS
### 42 U.S.C 1983

78. Plaintiffs re-allege all matters set forth above and incorporate them as if fully set forth herein.

79. The Fourteenth Amendment protects United States citizens against violation of fundamental rights by state actors.

80. Fundamental rights are liberty interests deeply rooted in the nation's history and tradition, and implicit in the concept of ordered liberty and the rule of law.

81. Mary Smith has a fundamental right to bodily privacy that, at a minimum, includes protection from intimate exposure of her body and intimate activities to a person of the opposite sex. It also includes the corollary protection from intimate exposure to a male's body or intimate activities.

82. The fundamental right to bodily privacy as to persons of the opposite sex is deeply rooted in the nation's history and tradition and has been recognized as a natural right supported by the United States Constitution and federal and state statutory and common law.

83. Maryland's Constitution includes increased protections under its Declaration of Rights for historical natural rights rooted in the history and tradition of English common law as they existed on July 4, 1776, and has made those rights unalienable unless specifically abrogated by statute of the Legislature of Maryland, or by judicial ruling.

84. Specifically, the Maryland Constitution Declaration of Rights, Art. 5(a) states in primary part:

    (1) That the Inhabitants of Maryland are entitled to the Common Law of England, and the trial by Jury, according to the course of that Law, and to the benefit of such of the English statutes as existed on the Fourth day of July, seventeen hundred and seventy-six;

85. The Maryland Constitution Declaration of Rights, Art. 24 states Due Process protections of Plaintiffs:

    That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land *(amended by Chapter 681, Acts of 1977, ratified Nov. 7, 1978).*

86. The fundamental right to bodily privacy is implicit in the concept of ordered liberty because no government acting upon the whims of a Board of Education policy may change the law of the land and compel its citizens to disrobe or engage in intimate activities in the presence of

the opposite sex, or leave the place of women's public accommodation if one objects, as such is a disseizing of the individuals' liberty, privileges and exiling them as a public outlaw.

87. The United States has a history of protecting its citizens, especially children, from suffering the risk of exposing their bodies or their intimate activities to the opposite sex.

88. State law makes any compulsory exposures of children's bodies to include their intimate parts a crime should that result in the child being videoed, photographed, or touched in a prurient manner.

89. Government actors may not, by direct action or by risk of agency or proxy, expose children to becoming victims of child pornography by means of the videoing, photography or exposure of their personal bodies and privacy in a state of being undressed or intimate parts being uncovered.

90. Government actors may not, by direct action or by risk of agency or proxy, force children to undress and enter showers with or in front of members of the opposite sex, which actions evoke imagery from the horrors of Nazi death camps our nation valiantly liberated through victory in World War II.

91. Criminal protections are greater for children than the general public for charges of indecent exposure.

92. Pornography of adults is legal, however, it is illegal to possess, distribute, or even view images of naked children, and state actors may not compel students to expose themselves to the risk of such electronic means of "sexting", especially when the Board of Education recently passed another policy mandating that FCPS schools encourage and allows all children to bring their own electronic devices, phones, iPads, and iPods with cameras to school.

93. It is state law, Md. Ann. Code Public Safety Article § 12-503 (Construction of State Buildings),

that public restrooms, bath facilities and locker rooms are separated by sex, and such policy is an historic American social norm that the Board of Education has no authority to contravene.

94. Minors have a fundamental natural and civil right to be free in their bodies from State compelled risk of exposure of their bodies, or to be shamed into separate facilities because they have a right to use the bath facilities posted and constructed under state law mandates for sex-designated facilities.

95. On May 30, 2017 Board of Education Vice President Liz Barrett, a hard-left lesbian "gender identity" activist who was the primary sponsor of and, on information and belief, internal lobbyist for Policy 443, wrote an e-mail response to Plaintiff Jane Doe addressing Plaintiff's concerns and objections to the Policy 443 as not having appropriate public input and notice and VP Barrett stated: "…there is no political necessity [to obtain parental input]. The rights of any group of FCPS children aren't up for a community "vote" or "survey." I'm a parent, and I'm not interested in the community deciding where my child can use the bathroom, nor am I interested in staff members or others questioning the restroom my children use…." (**Exhibit E, attached and incorporated herewith**).

96. VP Barrett admits in this statement that Defendants have no compelling state interest or "political necessity" to justify this violation of minor's right to bodily privacy from persons of the opposite sex.

97. The violation of this right is particularly acute where, as here, her rights were first violated without any notice or consent by secret practice of the Board of Education, in the place where traditionally and by state statute is reserved for persons of one biological sex.

98. The violation is ongoing because it compromises the most intimate of minor's human affairs in a setting reserved under state and federal law for persons of one biological sex. It is official

bullying and has turned on its head the intent and purpose of the Maryland Legislature to provided separate accommodations for any persons who do not identify with their biological sex, and instead violates the privacy and shames and bullies the woman or man who dares to be a woman or man desiring of privacy consistent with deeply rooted notions of fundamental personal interests in privacy from persons of the opposite sex.

99. Defendants admittedly failed to ensure the least restrictive means of serving any interest that they may later articulate.

100.    Accordingly, the actions and practice fail constitutional muster under strict scrutiny and are therefore illegal and unconstitutional.

WHEREFORE, Plaintiffs respectfully requests this Court grant the relief set forth hereinafter in the demand for relief.

## COUNT TWO
## VIOLATION OF TITLE IX

101.    Plaintiffs re-allege all matters set forth in this complaint and incorporate them as if fully set forth herein.

102.    "Transgender" activists have no legal basis to detract from women's rights by turning those rights against the very women the law protects, and forcing women to share locker rooms, showers, sports teams and sports grants and scholarships, and be forced to undress in front of, males who from time to time self-identify as females.

103.    A woman is not merely an identity, it is her actual personhood and reality as an XX chromosome created human being, engendering to her all the rights and privileges that her status as a woman has gained under law and civilization.

104.    Title IX provides that "[n]o persons in the United States shall, on the basis of sex, be

excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U. S. C. § 1681(a).

105.    The Board of Education and FCPS is a federal funding recipient for purposes of Title IX.

106.    Title IX has a broad effect in order to combat sex discrimination in taxpayer-funded education.

107.    There is an implied right of action for a student to sue school officials under Title IX.

108.    Defendants authorizing people to use bath facilities or locker rooms that are sex-designated, by people of the opposite biological sex, violates privacy and creates an environment of sexual harassment.

109.    Exposure without consent to persons of the opposite sex in various states of undress creates an environment of sexual harassment.

110.    The policy of the Board of Education is to allow those who self-identify with the opposite biological sex to choose to use locker rooms and bath facilities that are designated for the opposite biological sex.

111.    This policy 443 needlessly subjects minor Plaintiff to the risk that her unclothed body will be exposed to the opposite sex and that she will be exposed to an unclothed person of the opposite sex, and that the bath facilities will not be monitored by adults who are prevented by criminal Code from viewing minors without legal or medical cause or the consent of their parents in an unclothed state.

112.    As a result, Mary Smith experienced embarrassment, humiliation, frustration, degradation, and loss of dignity.

113.    Mary Smith has been bullied and marginalized by other students and by teachers on

account of her mother's and her objection to the policy.

114.    Out of fear and apprehension, Mary Smith is avoiding bath facilities at school and extracurricular activities that could require changing her clothing at school, causing her great harm and loss of opportunity and rights that she is guaranteed under Title IX.

115.    Policy 443 violates Title IX because it intentionally produces sexual harassment and a hostile environment on the basis of sex and denies access to educational programs and benefits.

116.    Mary Smith satisfies the elements of Title IX's claim requirements in that: 1) she has and is being subjected to sexual harassment; 2) the harassment is severe, pervasive and objectively offensive; 3) the school must be deliberately indifferent to the harassment; and 4) the harassment must result in the denial of access to educational programs.

117.    Title IX and its implementing regulations provide for separate living facilities, bathrooms, locker rooms, and changing areas for male and female biological sexes.

118.    Title IX provides for such separate facilities for each sex because a purpose and intent of Congress is to prevent sexual harassment, and allowing members of the opposite sex into bath facilities designated for one biological sex would be sexual harassment.

119.    Policy 443, which opens the girls' bath facilities to biological males is harassment based on the girls' sex.

120.    Mary Smith has and is experiencing humiliation, degradation, and loss of dignity and fear the same for the future as a result of the policy and practice of the Defendants.

121.    Letting biological males use female bath facilities in a public school is so egregious as to satisfy the severity prong.

122.    The harassment is ongoing and continuous, preventing Mary Smith from using the bath facilities and discouraging her from engaging in extracurricular activities, thus satisfying the

pervasiveness prong.

123.     The environment is one that a reasonable person would find hostile and objectively offensive and one that Mary Smith in fact perceives to be so, and is demonstrated by a long recognized right to be free from persons of the opposite sex in a state of undress or while performing private functions, and is reasonably also demonstrated by criminal public nudity laws and bathroom construction Codes.

124.     The Defendants are both on notice of the hostile environment and actually sustain the hostile environment, through passage and implementation of Policy 443.

125.     Moreover, Plaintiffs have repeatedly notified Defendants of their objection, only to be rebuffed by Defendants without any lawful basis.

126.     Defendants have authority to rescind their policy which would resolve the hostile environment created by that policy, and despite their knowledge of their policy creating the hostile environment, Defendants are refusing to rescind Policy 443.

127.     Instead, Defendants have advised that if Mary Smith feels the environment is hostile she should remove herself from the woman's bath facility and use a private stall room made available to people with disabilities and special needs, furthering the shaming and bullying against Mary Smith and violations of her privacy and rights under Title IX.

128.     The requirement to remove herself from the girls' bath facilities is not an accommodation contemplated under Title IX and violates her rights thereunder by creating a separate but unequal facility she is bullied into using.

129.     Mary Smith has been effectively denied the use of facilities and extra-curricular activities that are to be provided for her pursuant to federal and state law, on account of her biological sex.

130. Defendants policy and actions are violating Title IX by creating a hostile environment on the basis of sex.

WHEREFORE, Plaintiffs respectfully request the court grant the relief set forth hereinafter in the request for relief.

## COUNT THREE

## INVASION OF PRIVACY – INTRUSION UPON SECLUSION

131. Plaintiff re-alleges all matters set in this complaint and incorporates them as if fully set forth herein.

132. Defendants purposefully opened up the girls' bath facilities to biological males who identify as females or "gender non-conforming".

133. As a result, Mary Smith found herself unable to use the girls' bath facilities for fear of a male intruding upon her privacy.

134. As a result of the Defendants' policies and actions, Mary Smith found herself without any adult monitor and being photographed and videoed in her underwear or partially dressed by a fellow student.

135. Mary Smith and Jane Doe have a continuing fear of the ongoing tort of intrusion upon seclusion as long as the Board's policies regarding bath facilities are in place.

136. One's partially clothed body is a private affair and may not be intruded upon without consent.

137. Defendants practices and policies therefore caused and are causing Mary Smith's privacy to be intruded upon and she is fearful every day of the exposure her private affairs and body

or her unwanted intrusion of being forced by officials to view or observe a partially clothed or fully unclothed male body in the girls' bath facility.

138.    Common law both under the English and American customs have long protected our right to be free from undressing in the view of someone of the opposite sex and to be free from viewing someone of the opposite sex undressing.

139.    Particularly, public school laws including construction codes require separate facilities on the basis of sex, which has always meant solely on the basis of biological and anatomical sex.

140.    Defendants' have a duty under its practice and policy to regard Mary Smith's privacy.

141.    Defendants failed in their duty to regard Mary Smith's privacy.

142.    Mary Smith is discouraged in her use of and lacks access to the girls' bath facilities as a result of this invasion of seclusion.

143.    Additionally, Mary Smith has and is suffering emotional damages as a result of this invasion of her seclusion and privacy.

WHEREFORE, Plaintiffs respectfully request that the court grant the relief set forth hereinafter in the request for relief.

## COUNT FOUR

### FIRST AMENDMENT – RIGHT TO FREE SPEECH

### Freedom of Speech and Due Process (Articles 24 & 40, Edu. Art. 7-121)

144.    Plaintiff re-alleges all matters set in this complaint and incorporates them as if fully set forth herein.

145.    The First Amendment says in part: "Congress shall make no law…abridging the freedom of speech, or of the press…"  Amend. I, Const.

146.    Justice Robert Jackson in the Supreme Court opinion, *West Virginia Sch. Bd. v. Barnette*,

described this freedom as applying to public schools when writing:

> If there is any fixed star in our Constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion **or force citizens to confess by word or act** their faith therein.

*West Virginia Sch. Bd. v. Barnette*, 319 U.S. 624, 637 (1943)(bold emphasis added).

147.    All acts alleged herein by Defendants, and their agents, members, officers, principals, teachers, employees, or persons acting at their behest, were done under color and pretense of state law.

148.    Defendants' policies, regulations and actions, including but not limited to Policy 437 ("bullying") and 443 ("transgender students") are forcing Plaintiff Mary Smith and students and parents to use the gender pronouns that the school or a fellow student demands, regardless of the actual sex of the student, all on pain of reporting for bullying, and mistreatment by discipline and retaliation permanently noted in the school records of the student against any offending student, by government school staff.

149.    Defendants' policies, regulations and actions are forcing Plaintiff Mary Smith to be silent as to her speech on issues of women's rights and the public interest, on pain of being reported for bullying, and discipline retaliation permanently noted in her school records.

150.    Defendants' policies, regulations, procedures and actions are not narrowly tailored to accomplish any compelling governmental purpose, and do not specify, in the nonpublic forum of the public school, that (1) they are content neutral (i.e., they do not treat speech differently based on content); (2) they are narrowly tailored to serve a governmental interest; and (3) they leave open ample alternative means of expression.

151.    Additionally, Defendants seek to change thousands of years of normal, reasonable state-law mandated and scientifically-supported speech referring to boys and girls

according to their sex, and instead seeks to legislate *ultra vires* to force a major societal change in speech behavior in violation of the speech rights of Plaintiffs.

152.    The actions and policies of Defendants have caused severe emotional damages to Plaintiffs and are continuing to cause such damages each day they are in place.

WHEREFORE, Plaintiffs respectfully request that the court grant the relief set forth hereinafter in the request for relief.

**COUNT FIVE**
**FOURTEENTH AMENDMENT**
**– FUNDAMENTAL PARENTAL LIBERTY INTEREST-**

153.    Plaintiff re-alleges all matters set in this complaint and incorporates them as if fully set forth herein.

154.    On August 9, 2017 Chief of Staff of the FCPS and FCPS counsel and lawyer Jamie Cannon, Esq. stated in response to questioning on this Policy 443 and implementing regulations that parents will only be notified once and if the school deems the child to be on a "suicide watch" or similar comments, stating that the school "transfers liability back to the parents" only upon a designation of medical issues, and "Transgenderism" would not apply, or similar words.

155.    On August 9, 2017 other Board of Education members, including Jamie Cannon, Esq., stated that the information of a child's "transitioning" to transgender will be withheld from parents under Policy 443 because "kids are many times scared of parents being upset or disciplining them because of their choices" or similar words.

156.    On August 9, 2017 other Board of Education members, including Vice President Liz Barrett, stated that the Policy 443 is required in order to comply with "state law", but claims "COMAR" and "state regulations", and "400-20 and FERPA", requires no-parental disclosure.

157.    On August 9, 2017 Board of Education members, including Vice President Liz Barrett and

Joy Schaefer, stated "our reasons for not informing parents is because if we do a lot [sic] of students will not come to us for help [sic]". "Their kid doesn't feel safe talking to the child's parents, and that doesn't mean the child isn't safe at home, that's just a natural part of adolescence, and there is a sensitivity for that."

158.    On August 9, 2017 Board of Education member and Vice President Liz Barrett stated that "it wouldn't matter if the student was transgender or non-binary, other students may have fears of parents and we need to consider when to [not contact parents] and call 9-1-1…" or similar words.

159.    On August 9, 2017 Board of Education members asserted that the Policy 443 complies with "FERPA and state law" to "Respect parental rights" because "they have to, it is the law" so the second paragraph says what you want to protect parents, but not as strongly as [some parents] want" because "personal information about transgender and gender-non-conforming students" is "not to be shared with parents"… "if there is a health or safety concern". But other Board of Education members stated they want the policy to say "at all times, but especially if there is a health or safety concern…because we must welcome and affirm all students for who they are…".

160.    On August 9, 2017 Board of Education President Brad Young proposed that the policy 443 be changed to say "parents will be contacted if there is a health or safety concern" to which the Board of Education appeared to unanimously, with counsel of Jamie Cannon, Esq., approve of that change.  This change was modified to allow no-parental contact or report when there is **no** health or safety concern, under color and pretense of state law violating Plaintiff's fundamental parental rights.

161.    On August 9, 2017 the Board of Education, Vice President Liz Barrett, stated in public

meeting that accommodations for parents who do not wish their daughter to be housed on field trips with a transgender male 1) may not be told about the concern, and 2) if they do know, may not be allowed to change rooms, stating that "some kids don't have to go on field trips if the parents don't want them to because we can't address every problem in the school system" and if you don't like it, "good grief, call the supervisor…" or similar words.

162. These policies and procedures, made under color and pretense of state law, violate Plaintiff Jane Doe's parental rights under the Fourteenth Amendment to the United States Constitution.

163. Defendants policies, regulations and procedures are not narrowly tailored as to serve a compelling government interest, nor are they in compliance with constitutional, federal and state laws providing parental access to all school information about their children.

164. The actions, decisions, policies and regulations of Defendants are a continuing violation of Plaintiff's parental rights.

165. Plaintiff has and is suffering emotional damages as a result of this violation of her constitutional rights.

WHEREFORE, Plaintiffs respectfully request that the court grant the relief set forth hereinafter in the request for relief.

## COUNT SIX

### Separation of Powers-Legislative Proceedings

### and Government derived of the people and its English Common Law (Articles 1, 5, 8 & 10),

166. Plaintiff re-alleges all matters set in this complaint and incorporates them as if fully set forth herein.

167. The United States and Maryland Constitutions mandate that legislative policy and changes to state law must be accomplished through the ordinary means of civilized and free

governments, that is through the elected Legislators empowered with making the laws.

168. The Maryland Declaration of Rights guarantees this right of self-government to Maryland citizens.

169. Defendants are attempting to bypass such Legislative powers and arrogate to themselves powers they do not possess, namely, to change state law and in so doing violate the separation of powers doctrines and powers of representative government.

170. The proper place for any change to the centuries-old laws and customs of the people to mandate new pronoun use, locker and bath use and sports team membership, is through the elected representatives of the County of Frederick to the Maryland General Assembly, those being solely empowered to propose and seek passage of laws fundamentally altering or changing any state law or custom in existence since before the founding of the United States.

171. Defendants are in violation of the separation of powers doctrines, by implementation of its own changes to state law without legislative or legal declaration or authority.

172. Plaintiffs are being deprived of their right to representative government under color of state law, and as such are suffering damages including severe emotional damages.

WHEREFORE, Plaintiffs respectfully request that the court grant the relief set forth hereinafter in the request for relief.

## COUNT SEVEN

## VIOLATION OF MARYLAND STATUTES

Education Art. § 2-205 (Powers and Duties of the Board [of Education]), § 4-117(b)(1)(Construction or Remodeling of Buildings to conform to State codes), § 5-301 (Public School Construction and Capital Improvements), and Md. Ann. Code Public Safety Article § 12-503 (Construction of State Buildings)

173.    Plaintiff re-alleges all matters set in this complaint and incorporates them as if fully set forth herein.

174.    Common usage of terms male and female are defined by Maryland statute.

175.    Defendants are redefining such terms *ultra vires* in violation of state law.

176.    The powers and duties of Defendants do not extend to redefining gender and sex in schools.

177.    The powers and duties of Defendants do not extend to redefining, altering and/or changing public school construction law in Maryland, mandating bathrooms and locker rooms to be identified by and used by members of the male and female sex and not, from time to time, by self-actualization or identity of students.

178.    The powers and duties of Defendants do not extend to redefining, altering and/or changing state government building construction codes, which mandate specified spaces for males and females by sex and not by gender identity.

179.    Defendants have in fact and are continuing to violate said statutes Education Art. § 2-205 (Powers and Duties of the Board [of Education]), § 4-117(b)(1)(Construction or Remodeling of Buildings to conform to State codes), § 5-301 (Public School Construction and Capital Improvements), and Md. Ann. Code Public Safety Article § 12-503 (Construction of State Buildings) by passage of Policy 437 and 443, and by its additional regulations, practices and actions.

180.    For these violations Plaintiffs have been harmed and incurred severe emotional damages.


WHEREFORE, Plaintiffs respectfully request that the court grant the relief set forth hereinafter in the request for relief.

**COUNT EIGHT**

**UNCONSTITUTIONALITY OF STATE STATUTES AND**

**BOARD OF EDUCATION POLICIES 437 AND 443**

**Md. Ann. Code Education Articles §§ 7-424 (Bullying), § 7-301 (Compulsory Attendance)**

181.    Plaintiff re-alleges all matters set in this complaint and incorporates them as if fully set forth herein.

182.    Defendants are falsely posturing their changes to centuries of statutory and legal definitions of mankind and personhood as if they are merely complying with state and federal law, including various COMAR, FERPA, and regulatory principles vaguely yet unnamed by Defendants, and statutes such as Md. Ann. Code Education Articles §§ 7-424 (Bullying), § 7-301 (Compulsory Attendance).

183.    Defendants' reliance on said laws and statutes is overly broad and without justification.

184.    Defendants' reliance on said laws and statutes, to the extent that any court finds it to be reasonable, is vague and unconstitutional as applied.

185.    Defendants' reliance on said laws and statutes, to the extent that any court finds it to be reasonable, is alternatively, demonstratively unconstitutional and said statutes should be declared void and of no effect as in direct violation of the civil liberties of Plaintiffs.

186.    The compulsory attendance code was originally passed in Maryland in 1907 as a narrowly stated purpose to educate children of ages 8 to 16 in reading, arithmetic and writing skills such that they would not be a burden to society and able to provide for themselves by work and communication.

187.    The statutes, policies, regulations and rules, to the extent the court finds Defendants are

following them, are therefore being construed with overbreadth and are unconstitutional as applied and in fact.

188.    Plaintiffs are suffering and continuing to suffer harm and severe emotional damages.

WHEREFORE, Plaintiffs respectfully request that the court grant the relief set forth hereinafter in the request for relief.

PETITION FOR RELIEF

WHEREFORE, Plaintiffs petition for judgment against Defendants jointly and/or severally as follows:

A.    A declaration that Defendants' policies and actions violate the Plaintiffs constitutional right to privacy;

B.    A declaration that Defendants' policies and actions violate Title IX of the United States Code to be free from discrimination on the basis of sex, creating a sexually harassing hostile environment against Plaintiff Mary Smith;

C.    A declaration that Defendants' policies and actions are an unlawful intrusion upon bodily seclusion and right to privacy;

D.    A declaration that Defendants' policies and actions violate Plaintiffs right to free speech under the United States and Maryland Constitutions;

E.    A declaration that Defendants' policies and actions violate Plaintiff Jane Doe's Fourteenth Amendment fundamental liberty interests in her parental rights of care, custody and control of the education, upbringing and moral and religious instruction of her daughter under the United States Constitution;

F. A declaration that Defendants' policies and actions violate the separation of powers doctrine granting sole authority to the Maryland Legislature to pass state laws;

G. A declaration that Defendants' policies and actions violate state statutes Education Art. § 2-205 (Powers and Duties of the Board [of Education]), § 4-117(b)(1)(Construction or Remodeling of Buildings to conform to State codes), § 5-301 (Public School Construction and Capital Improvements), and Md. Ann. Code Public Safety Article § 12-503 (Construction of State Buildings);

H. A declaration that FCPS BOARD OF EDUCATION POLICIES 437 AND 443, Md. Ann. Code Education Articles §§ 7-424 (Bullying) *et seq*, and § 7-301 (Compulsory Attendance) are unconstitutional as a matter of law, or alternatively, as applied;

I. A permanent injunction enjoining the Defendants' policies and ordering Defendants to: 1) communicate with parents as to all matters they become aware of relating, regarding or involving their child's sexuality or gender or related information or behavior in school; 2) only permit females to enter and use bath facilities of girls' restrooms, locker and shower rooms, and hotel rooms whenever traveling, and males to enter and use bath facilities of girls' restrooms, locker and shower rooms and hotel rooms whenever traveling; and an injunction enjoining Defendants from permitting males to participate in sport, athletic programs, and sports funding and scholarships with females, and females from participation in sports, athletic programs, and sports funding and scholarships with males;

J. An award of compensatory damages for violation of Plaintiffs constitutional and statutory rights;

K. An order retaining jurisdiction of this court for the purpose of enforcement of all Orders;

L. An award of Plaintiffs' costs and expenses of this action, including reasonable attorney's

fees pursuant to 28 U.S.C. § 2412, 42 U.S.C. § 1988;

M. Any other relief to which Plaintiffs are entitled including, but not limited to, attorney's

fees and costs of court.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all count, issues, facts and matters to triable.

Respectfully submitted this 11th day of August, 2017.

THE COX LAW CENTER, LLC

BY:  Dan Cox, Esq.

    /s/
Daniel L. Cox, Federal Bar no. 28245
The Cox Law Center, LLC
P.O. Box 545
Emmitsburg, MD 21727
Phone: 410-254-7000
Facsimile: 410-254-7220
E-mail: dcox@coxlawcenter.com
*Attorney for the Plaintiff*